# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  June 03, 2019

Mr. Robert Anthony Alvarez
Mr. Agustin Henriquez Jr.
Avanti Law Group, 600 28th Street, S.W.
Wyoming, MI 49509

Mr. Gregory N. Longworth
Clark Hill
200 Ottawa Avenue, N.W., Suite 500
Grand Rapids, MI 49503

Re:  Case No. 18-1981, *Howard Holt, et al v. City of Battle Creek*
Originating Case No. : 1:15-cv-00931

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Thomas Dorwin

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

HOWARD HOLT; MARTIN ERSKINE,

*Plaintiffs-Appellants*,

*v.*

CITY OF BATTLE CREEK,

*Defendant-Appellee*.

No. 18-1981

———————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-00931—Janet T. Neff, District Judge.

Argued:  May 3, 2019

Decided and Filed:  June 3, 2019

Before:  GUY, CLAY, and GRIFFIN, Circuit Judges.

———————

## COUNSEL

**ARGUED:**  Robert Anthony Alvarez, Agustin Henriquez, Jr., AVANTI LAW GROUP, PLLC, Wyoming, Michigan, for Appellants.  Gregory N. Longworth, CLARK HILL PLC, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Robert Anthony Alvarez, AVANTI LAW GROUP, PLLC, Wyoming, Michigan, for Appellants.  Gregory N. Longworth, CLARK HILL PLC, Grand Rapids, Michigan, for Appellee.

———————

## OPINION

———————

CLAY, Circuit Judge.  Plaintiffs Howard Holt and Martin Erskine appeal from the judgment entered in favor of Defendant City of Battle Creek on Plaintiffs' claim that Defendant

violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay Plaintiffs overtime wages.  For the reasons set forth below, we **AFFIRM** the decision of the district court.

## BACKGROUND

### Factual History

Plaintiffs Holt and Erskine each served as a battalion chief in Defendant's fire department.  Holt was the "suppression" battalion chief from 2007 until his retirement in 2015; Erskine became the "administrative" battalion chief in 2012 and has not retired.  Battalion chiefs are second in command in the fire department hierarchy, behind the fire chief but ahead of other employees.  Plaintiffs served under three different fire chiefs: Chief Larry Hausman from 1997 through April 2013, Chief Jackie Hampton from April 2013 through January 2014, and Chief Arthur David Schmaltz from February 2014 through the rest of the time period at issue.

## I.  Battalion Chief Job Responsibilities

The City of Battle Creek's job description for battalion chiefs included the following summary of the position's responsibilities:

> Provides supervision to fire fighting personnel; Implements the incident command system and serves as incident commander at all incidents; Accepts responsibility for assigned administrative and fire prevention functions; Functions as the chief administrative officer of the department in absence of the Fire Chief and Deputy Fire Chief; Actively supports the decisions and policies of the City and fire administration and performs related work as required.

(Appellee Appendix, Joint Exhibit 5, A32.) The document also described essential job functions of the battalion chiefs, which included "[p]repar[ing] and administer[ing] disciplinary actions against subordinate personnel in the form of coaching and counseling, oral and written reprimands;" "[c]onduct[ing] evaluations of immediate subordinate personnel, review[ing] evaluations of other personnel assigned to shift, and provid[ing] feedback to subordinate personnel;" "[i]nspect[ing] fire stations, apparatus, equipment, and personnel to ensure operational readiness on a daily basis;" and "[p]lan[ning] and coordinat[ing] daily activities of shift personnel in concert with training, pre-plan inspections, maintenance, and public activities

such as fire prevention." (*Id.*) While Plaintiffs did not have direct authority to make hiring and firing decisions, they conducted performance evaluations that were used in the promotional process and were otherwise involved in advancement decisions.

An internal department memo described the different areas of responsibility of the administrative and suppression battalion chiefs. Erskine's responsibilities as administrative battalion chief included training fire department personnel, ensuring road safety, creating a "plan of the day" and "plan of the week" for the officers and firefighters, and approving vacation requests. As suppression battalion chief, Holt's responsibilities listed in the memo included serving as the immediate supervisor for station officers, maintaining fire department standards, handling facility issues, and overseeing uniforms and supplies.

Chief Hausman testified that the "primary responsibility" of the battalion chiefs and fire chief was "not physical work, it was . . . management and leadership," and that the "majority" of their jobs consisted of "administrative functions, you know, management." (R. 122, Hausman Deposition, PageID # 1012.) When called to a fire, a battalion chief's role as incident commander, according to Chief Hausman, was to remain in the vehicle and "manage, lead, and direct" the fire suppression efforts by "monitoring the situation[ and] taking input from the company officers." (*Id.* at PageID # 1013.) Chiefs Hausman and Schmaltz each testified that they gave particular weight to Holt's recommendations regarding discipline; Schmaltz referred to the battalion chiefs as his "senior staff." (R. 128, Transcript, PageID # 1077.) Holt and Erskine each testified that while they had the power to issue verbal and written reprimands, the ultimate decision as to discipline rested with the fire chief, and the fire chief occasionally overrode Plaintiffs' disciplinary recommendations.

## II. Standby Duty

As battalion chiefs, Plaintiffs were required to periodically serve on "standby" duty. Standby duty typically rotated between Holt, Erskine, and the fire chief, with the individual serving on standby required to be "on call" from 5:00 pm until 8:00 am the following morning

for seven days.[1] Plaintiffs received 1.5 hours of pay for each day of standby duty, in addition to overtime pay for hours worked if they were called back to active duty while on standby. The individual on standby duty was required to monitor a pager and a radio, answer phone calls if needed, and help handle problems if they arose.

Plaintiffs were occasionally required to respond to the scene of a fire while on standby duty. Therefore, Plaintiffs' activities were somewhat restricted during the weeks they were on standby. The officer on standby duty could not drink alcohol or go out of town. Plaintiffs both testified that they stopped playing organized sports while on standby, out of concern that they would not hear the pager if it went off while they were playing. Holt testified that when he and his wife went out to eat while he was on standby, they had to take two cars so that she would not be left stranded at the restaurant if he had to go to the scene of a fire; Holt's wife testified that "when he was on call, we were pretty much prisoners right there in the house." (R. 128, Transcript, PageID # 1104.) Mrs. Holt also testified that standby duty disrupted their sleep, because the pager would occasionally go off during the night if an "all stations" fire occurred.

Chief Hausman's testimony differed from Plaintiffs' regarding the restrictiveness of standby duty. While Holt and Erskine testified that they continually monitored their radios during standby duty, Hausman testified that there was "no expectation [that] the radio [would be] monitored 24/7" during standby, because the pager provided sufficient notice of an alarm. (R. 122, Hausman Deposition, PageID # 1014.) Chief Schmaltz testified that he left his radio in his car when he was at home on standby duty for the same reason. Hausman also testified that other battalion chiefs had been able to engage in activities such as golfing and working on a horse farm while on standby. Hausman stated that standby duty was not so onerous as to prevent him from effectively using his time for personal pursuits.

### Procedural History

On September 12, 2015, Plaintiffs filed a complaint in federal court alleging that the City of Battle Creek had violated the FLSA by failing to pay overtime for hours worked in excess of

---

[1]In 2015, the City of Battle Creek transitioned from the week-long standby system to 24-hour shift rotations, with battalion chiefs now paid for every hour they are on call.

40 per week due to standby duty.  Defendant filed a motion to dismiss in favor of arbitration on July 20, 2016 and a motion for summary judgment on November 13, 2017; the district court denied both motions.  After a bench trial, the district court ruled that Plaintiffs were exempt from the FLSA's overtime pay requirement under both the executive and the administrative exemptions.  The district court also held that, even if Plaintiffs "were within the classes of employees subject to FLSA coverage, their duties during standby time were not so onerous as to prevent them from effectively using the time for personal pursuits."  (R. 129, Transcript, PageID # 1333.) This appeal followed.

## DISCUSSION

## I.  Applicability of the "Fair Reading" Standard

### Standard of Review

"After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo."  *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 643–44 (6th Cir. 2013).  Because this issue involves a legal question, we review it *de novo*.

### Analysis

The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours a week.  The FLSA exempts certain classes of employees from the overtime pay requirements.  29 U.S.C. § 213. Until recently, courts "narrowly construed [the exemptions] against the employers seeking to assert them."  *See, e.g., Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).  In the 2018 case *Encino Motorcars, LLC v. Navarro*, however, the Supreme Court held that courts should apply a "fair reading" to the exemptions.  138 S. Ct. 1134, 1142 (2018). The district court in this case followed the Supreme Court's instruction to give the exemptions a fair reading, and under that standard, it determined that Plaintiffs were exempt from the FLSA's overtime requirement under the executive and administrative exemptions.

Plaintiffs argue that the district court erred in applying the fair reading standard to the FLSA exemptions.  According to Plaintiffs, the Supreme Court's language in *Encino* endorsing a

"fair" instead of a "narrow" construction of the FLSA exemptions is dicta as applied to anything other than the salesman exemption that was under consideration in *Encino*.  Under Plaintiffs' theory, all exemptions other than the salesman exemption are still subject to a narrow interpretation.

Plaintiffs' theory is incorrect.  Even if the Supreme Court's statement in *Encino* was dicta outside of the context of the salesman exemption, "[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale."  *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015) (alteration in original) (quoting *ACLU of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 447–48 (6th Cir. 2010)).  *Encino* is a recent Supreme Court decision, and there have been no intervening Supreme Court cases casting doubt on its analysis.  Moreover, this Court and others have applied *Encino*'s fair reading standard outside of the salesman exemption.  *See Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 570–71 (6th Cir. 2018) (professional exemption); *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 228 (2d Cir. 2018) (outside salesman exemption); *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 579 (5th Cir. 2018) (Motor Carrier Act exemption).  The district court was bound by the Supreme Court's pronouncement in *Encino*, and it did not err by applying the fair reading standard in this case.

## II.  Applicability of the Exemptions

### Standard of Review

As explained above, we review the district court's factual findings for clear error and conclusions of law *de novo*.  Fed. R. Civ. P. 52(a); *Foster*, 710 F.3d at 644.  This issue involves the district court's factual findings, so clear error review applies.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713 (1986) ("[T]he facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the courts of appeals [for clear error] . . . .").  "In [its] review of the district court's factual findings, this Court gives due regard to the district court's opportunity to judge the credibility of the witnesses."  *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 597 (6th Cir. 2001).  "Clear error will be found only when the reviewing court is left with the definite and firm

conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 808 (6th Cir. 2015). As the Supreme Court has explained:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985). Therefore, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575.

### Analysis

The district court found that Plaintiffs were exempt from the FLSA's overtime pay requirements under both the executive and the administrative exemptions. Plaintiffs argue this was clear error.[2] For the reasons set forth below, the district court did not clearly err in finding Plaintiffs exempt from the FLSA's overtime pay requirements.

The executive exemption of the FLSA has four elements. 29 C.F.R. § 541.100. Only the second and fourth elements are at issue in this case. The second element states that an executive employee is one "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2). The fourth element states that an executive employee is one "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).

---

[2]Plaintiffs also argue that the district court erred by not "methodically dissecting and analyzing each separate workweek" to determine whether the exemptions applied at any given time. (Plaintiffs' Br. at 34.) However, the section of the FLSA regulations that Plaintiffs cite in support of that proposition is not applicable to this case, because it only relates to the exemptions applicable to agricultural workers. 29 C.F.R. § 780.11. The regulations applicable to the executive and administrative exemptions, in contrast, state that an employee may be subject to the exemptions even if part of that employee's time is spent performing nonexempt work. 29 C.F.R. § 541.700.

No. 18-1981                  *Holt, et al. v. City of Battle Creek*                  Page 8

### A.  Primary Duty

The district court found that Plaintiffs' primary duty was managerial in nature, satisfying the second element of the executive exemption. The district court focused on the fact that Plaintiffs "were required to directly supervise lower-ranking officers and personnel, evaluate personnel, administer and enforce department policy, and coordinate the day-to-day operations of the department." (R. 129, Transcript, PageID # 1321.)  The district court pointed to several pieces of evidence and testimony that supported this finding. It noted that testimony established that the battalion chiefs were expected to "take charge and operate as the incident commanders at the scene of a fire." (*Id.* at PageID # 1322 (internal quotations omitted).)  Additionally, the district court stated:

> Chief Schmaltz and Chief [Hausman] both testified that plaintiff Holt was "in charge" of all suppression personnel and plaintiff Erskine was "in charge" or "oversaw" the training division.  Approximately 27 lieutenants and captains directly reported to plaintiff Holt[,] who monitored their adherence to standards. Moreover, Chief [Hausman] testified that if any fire fighter "had a problem[,]" he or she would take it to plaintiff Holt.

(*Id.* at PageID # 1322–23.) Finally, the district court recognized that even Plaintiffs had referred to themselves as "management" in a June 4, 2014 letter to Chief Schmaltz.

This evidence supports the district court's conclusion that Plaintiffs' primary duty was management of the City of Battle Creek fire department. Plaintiffs argue that the district court's conclusion was clear error because Plaintiffs' "actual[] job duties, not the ones described in their [Standard Operating Procedures], were that of a regular rank and file firefighter, with [a] few added responsibilities for the sake of preserving order in chaos in a fire fight." (Plaintiffs' Reply Br. at 7.)  In essence, Plaintiffs argue that the district court should have weighed the evidence differently to conclude that Plaintiffs' primary duties were not managerial. This argument is unpersuasive. Ample evidence supports the district court's conclusion, so this Court cannot second-guess the district court's factual findings. *See Anderson*, 470 U.S. 573–74. The district court did not commit clear error in concluding that Plaintiffs' duties were primarily managerial.

No. 18-1981                    *Holt, et al. v. City of Battle Creek*                    Page 9

**B.  Recommendations Given Particular Weight**

The district court found that the fourth element of the executive exemption was also satisfied.  While the district court recognized that Plaintiffs did not have independent authority to hire, fire, or suspend fire fighters, it credited certain testimony as showing that Plaintiffs' "suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees were given 'particular weight.'"   (R. 129, Transcript, PageID # 1324–25.)  The district court stated:

> Chief [Hausman] testified that plaintiff Holt was the person who was responsible for oral and written disciplinary proceedings of the fire fighters, and that Holt issued the "majority" of the discipline in the department.   Chief [Hausman] testified that he gave "a lot of weight" to plaintiff Holt's recommendation, that he did "not operate in a vacuum."   Chief [Hausman] also specifically testified that plaintiff Erskine, the administrative battalion chief, was responsible for managing vacation and "Kelly days" in the department.

(*Id.*)  The district court also pointed to Chief Schmaltz's testimony that he "specifically requested [P]laintiffs' input concerning personnel decisions" and the testimony of the former employee relations director for the City of Battle Creek that Plaintiffs played a "significant role" in hiring decisions.  (*Id.* at PageID # 1325.)

Plaintiffs again argue that the district court's conclusion was erroneous.  Plaintiffs point to specific pieces of evidence purportedly showing that they did not have the requisite authority regarding personnel decisions under 29 C.F.R. § 541.100(a)(4).  Specifically, Plaintiffs highlight parts of their testimony in which they described times the fire chiefs overruled Plaintiffs' disciplinary recommendations.  However, this element of the executive exemption does not require courts to ask whether an employee's recommendations as to personnel decisions were accepted every single time—instead, it presents the question of whether those recommendations were given "particular weight," which is precisely what the district court found.  This argument presents yet another example of the district court making a reasonable choice between two permissible views of the evidence.  *See Anderson*, 470 U.S. 573–74.  The district court cited sufficient evidence to support its finding that Plaintiffs' recommendations were given particular weight.  The district court did not commit clear error in reaching that conclusion.

No. 18-1981                      *Holt, et al. v. City of Battle Creek*                      Page 10

Our determination that the district court did not commit clear error in finding Plaintiffs subject to the executive exemption is sufficient to uphold the district court's denial of Plaintiffs' claim for overtime compensation under the FLSA.  Therefore, we need not address the district court's additional conclusions that Plaintiffs were also subject to the FLSA's administrative exemption and that, even if the exemptions did not apply, standby time was not so onerous as to be compensable under the FLSA.

### CONCLUSION

The district court did not commit clear error in holding that Plaintiffs were subject to the executive exemption under the FLSA.  We therefore **AFFIRM** the decision of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 18-1981

HOWARD HOLT; MARTIN ERSKINE,

    Plaintiffs - Appellants,

      v.

CITY OF BATTLE CREEK,

    Defendant - Appellee.

> **FILED**
> Jun 03, 2019
> DEBORAH S. HUNT, Clerk

Before:  GUY, CLAY, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the ruling of the district court in favor of Defendant is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk